# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

Robert L. Schuessler,
Audra Schuessler, and
Landl Farms, LLC,

Plaintiffs,        Adversary No. 20-02065-bhl

v.

The United States Small Business Administration and
Jovita Carranza, Solely as Administrator of
the U.S. Small Business Administration,

Defendants.

---

Arthur G. Steffen and
Genart Hillcrest Farms, LLC,

Plaintiffs,        Adv. Proc. No. 20-02068-bhl

v.

The United States Small Business Administration and
Jovita Carranza, Solely as Administrator of
the U.S. Small Business Administration,

Defendants.

---

Thull Farms, LLC,

Plaintiff,        Adv. Proc. No. 20-02069-bhl

v.

The United States Small Business Administration and
Jovita Carranza, Solely as Administrator of
the U.S. Small Business Administration,

Defendants.

---

## DECISION ON CORE CLAIMS AND
## REPORT AND RECOMMENDATION ON NON-CORE CLAIMS

### INTRODUCTION

These adversary proceedings concern efforts by the plaintiffs, debtors in pending Chapter 12 bankruptcy proceedings, to obtain benefits from the Small Business Administration (SBA) under the Paycheck Protection Program (PPP). Plaintiffs are family farmers whose PPP loan

applications were denied because of their pending bankruptcy cases.  Plaintiffs then filed adversary proceedings against the SBA and its Administrator (collectively the "SBA"), contending that the SBA's denial of their applications runs afoul of Bankruptcy Code section 525(a) and the Administrative Procedure Act.  Plaintiffs seek declaratory and injunctive relief and a writ of mandamus, requiring the SBA to consider their applications without regard to their pending bankruptcy cases.

After a May 15 expedited preliminary hearing in *Schuessler, et al. v. SBA, et al.*, Adv. No. 20-2065, the plaintiffs in that case filed a motion for injunctive relief and a supporting declaration.  In the motion, plaintiffs ask the court to declare that the SBA's rule disqualifying bankruptcy debtors from receiving PPP loans is beyond the agency's statutory and regulatory authority, is arbitrary and capricious, and violates section 525(a) of the Bankruptcy Code.  They also ask the court to enter various forms of injunctive relief against the SBA, including enjoining the agency from denying the plaintiffs a PPP loan based on their status as debtors in bankruptcy, requiring that the SBA set aside funds sufficient to satisfy the plaintiffs' PPP requests, and compelling the SBA to instruct plaintiffs' lender not to exclude them from the PPP based on their bankruptcies.  The court set a final hearing on the motion for May 19, 2020.

Shortly before the May 19 hearing, the *Schuessler* plaintiffs, along with the plaintiffs in two other adversary cases, *Steffen, et al. v. SBA, et al.*, Adv. No. 20-2068-beh, and *Thull Farms, LLC v. SBA, et al.*, Adv. No. 20-2069-kmp, filed a joint motion with the defendants, asking the court to consolidate its consideration of all three adversary proceedings because the proceedings involve the same issues, the parties are represented by the same counsel, and consolidation would avoid unnecessary costs and delay.  After the parties confirmed that all three cases were ripe for final resolution, the court granted the motion and continued the hearing to May 21, 2020, allowing time for the *Steffen* and *Thull Farms* plaintiffs to file similar motions for injunctive relief.  The court then entered an Order directing the clerk to reassign the *Steffen* and *Thull Farms* proceedings and consolidating all three adversaries for resolution.

At the consolidated May 21, 2020 final hearing, the court issued an oral ruling, rejecting the merits of the plaintiffs' claims and denying their requests for relief.  This decision documents and supplements the oral ruling.

## BANKRUPTCY COURT JURISDICTION

Before addressing the parties' arguments, the court must consider its jurisdiction.  Under 28 U.S.C. §1334(b) and the district court's order of reference, this court has jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11.  Plaintiffs' claims in this adversary proceeding arise under or relate to their bankruptcy cases and thus fall within the court's broad jurisdiction.  Whether the bankruptcy court can finally resolve the parties' disputes requires further analysis.

Subject to constitutional limitations, a bankruptcy court can enter final orders only on "core" bankruptcy claims.  *See* 28 U.S.C. §157.  For "non-core" proceedings, the bankruptcy court is not authorized to enter final orders unless all parties consent.  *Id.*  This distinction affects the standard of review.  As the Supreme Court has explained,

> If a matter is core, the statute empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court.  If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law.  Then, the district court must review the proceeding *de novo* and enter final judgment.

*Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014).

"It is the bankruptcy court's responsibility to determine whether each claim before it is core or non-core."  *Id.* at 33.  "A proceeding is core under section 157 if it invokes a substantive right provided by title 11 or is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."  *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).  "Core proceedings are actions . . . that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law."  *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997).  A "non-core" proceeding, on the other hand, is one in which the plaintiff does "not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy . . . it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding."  *Barnett v. Stern*, 909 F.2d at 981 (quoting *In re Wood*, 825 F.2d at 97) (emphasis in original).

The complaints in all three adversary proceedings are nearly identical.  The only differences relate to each plaintiff's particular farming operation and the timing of each

plaintiff's PPP application and denial. The substantive legal portions of each complaint are the same. Defendants concede that Count III in each complaint, in which plaintiffs assert claims under section 525(a) of the Bankruptcy Code, is a core claim. Indeed, that cause of action is expressly premised on and arises under the Code, and this court can "hear and determine" and "enter appropriate orders and judgments" on it. *See* 28 U.S.C. §157(b)(1). The remaining three counts are another matter. Counts I, II, and IV allege violations of the APA and seek mandamus relief. These claims do not originate in the Bankruptcy Code and are non-core. Accordingly, the bankruptcy court may hear them, but cannot issue final orders or judgments without the parties' consent, which is absent in this case. *See* 28 U.S.C. §157(c)(1), (2).

The court's factual findings (both final on the core claim and recommended on the non-core claims) are set forth in the "Background and Factual Findings" section of this decision. The court's final legal conclusions on Count III are set forth in Part I of the "Legal Conclusions and Analysis" section. The court's recommended conclusions of law on the remaining non-core claims are set forth in Parts II and III of that section.

## BACKGROUND AND FACTUAL FINDINGS

### A. The Plaintiffs

#### 1. *Schuessler, et al. v. SBA, et al., Adv. No. 20-2065*

On October 30, 2018, Robert L. Schuessler and Audra Schuessler filed a chapter 12 petition. (Case No. 18-30197, ECF No. 1.) On that same day, their wholly-owned limited liability company, Landl Farms, LLC, filed a separate chapter 12 petition. (Case No. 18-30199, ECF No. 1.) Landl Farms is the operating entity that runs the day-to-day farming operations and employs the farm help. The Schuesslers own the real estate and improvements and Robert Schuessler directs the farming operation. (Debtors' Mot. Joint Admin. 4, Case No. 18-30197, ECF No. 8.) The court entered an order directing joint administration of both cases on December 3, 2018. (Order, Case No. 18-30197, ECF No. 23.) The debtors' second amended plan was confirmed on May 8, 2019, and the debtors have been operating under the plan since confirmation. (Order, Case No. 18-30197, ECF No. 84.)

As their primary source of income, plaintiffs rely on revenue from selling milk and from the sale of cows culled from their herd and sold for meat. (Compl. ¶33, Adv. No. 20-2065, ECF No. 1.) Revenue from the sale of milk has declined by over 30% primarily due to the COVID-19

crisis. Since January, plaintiffs' Class I milk price has dropped from nearly $19.00 to $12.50 per cwt. The current price is substantially below plaintiffs' cost of production. (Compl. ¶33, Adv. No. 20-2065, ECF No. 1.) Due to the closure of slaughterhouses in Wisconsin and the upper Midwest, plaintiffs have received historically low prices for cows recently culled from the herd. At the same time, plaintiffs have significant mortgage and utility expenses and employ 14 people with an average monthly payroll of $59,835. (Compl. ¶34, Adv. No. 20-2065, ECF No. 1.) Although they have obtained some temporary concessions from creditors, plaintiffs acknowledge this is not a sustainable near-term strategy until the market recovers. (Decl. Robert Schuessler, Adv. No. 20-2065, ECF No. 22.)

At the announcement of the Paycheck Protection Program through the SBA, plaintiffs took steps to obtain a conditionally forgivable PPP loan. They applied to a financial institution, Fox Communities Credit Union, and supplied requested documentation. (Ex. 1 to Compl., Adv. No. 20-2065, ECF No. 9.) They received notice on or about May 5, 2020, however, that they did not qualify for a PPP loan because of their currently pending bankruptcy cases. (Ex. 2 to Compl., Adv. No. 20-2065, ECF No. 9.) Plaintiffs otherwise meet the requirements of the loan program: their small business is operated in the United States; the business is not a type ineligible for the Small Business Administration's 7(a) Loan Program, CFR 120.110; and the debtors have demonstrated a need for the desired credit. (Compl. ¶¶43-44, Adv. No. 20-2065, ECF No. 1.) Without a PPP loan, plaintiffs predict that they will be forced to lay off or furlough essential employees, negatively effecting the debtors' bankruptcy estates and potentially driving them out of business. (Compl. ¶58, Adv. No. 20-2065, ECF No. 1.)

On May 12, 2020, plaintiffs filed a Complaint for Declaratory Judgment, Writ of Mandamus and Injunctive Relief against the United States of America Small Business Administration and Jovita Carranza, solely as Administrator of the U.S. Small Business Administration. (Adv. No. 20-2065, ECF No. 1.) The adversary proceeding was filed under the Administrative Procedure Act, 5 U.S.C. §§701 *et seq*., and section 525 of the Bankruptcy Code seeking (a) a declaratory judgment that the SBA's implementation of the PPP is unlawful, discriminatory against prospective borrowers who are debtors in bankruptcy, and beyond its statutory authority; (b) a writ of mandamus under 28 U.S.C. §1361 to compel the SBA to remove its disqualification of the bankruptcy debtors as viable applicants from all PPP applications, including the PPP official SBA Form 2483 (PPP Borrower Application); and (c) an order

enjoining SBA from denying plaintiffs a loan under the PPP based on the plaintiffs' status as chapter 12 debtors.

On May 12, 2020, plaintiffs also filed a Motion for Emergency Hearing on the Complaint. (Adv. No. 20-2065, ECF No. 5.) On May 14, 2020, the United States, on behalf of the SBA, filed a response to the motion. (Adv. No. 20-2065, ECF No. 12.) On May 15, 2020, the court held a preliminary hearing on plaintiffs' Motion for Emergency Hearing. Counsel for the plaintiffs consented to the final judgment of the bankruptcy court on all proceedings in the case under 28 U.S.C. §157(c) and requested that a final hearing on the merits be set for early the following week. Counsel for the defendants withheld consent to the court's final judgment regarding the plaintiffs' claims under the APA pursuant to 28 U.S.C. §157(c) but agreed that the plaintiffs' claim under section 525(a) of the Bankruptcy Code constituted a core proceeding. The court allowed the parties time to make additional submissions prior to a final hearing scheduled for May 19, 2020. (Ct. Mins. Order, Adv. No. 20-2065, ECF No. 17.)

### 2. *Steffen, et al. v. SBA, et al., Adv. No. 20-2068*

On January 7, 2020, Arthur G. Steffen filed a chapter 12 petition. (Case No. 20-20108, ECF No. 1.) On that same day, his wholly-owned farming limited liability company, Genart Hillcrest Farms, LLC, filed a separate chapter 12 petition. (Case No. 20-20109, ECF No. 1.) Arthur Steffen is and has been a farmer all his life and lives on his family's intergenerational dairy farm. His mother lives on the farmstead with him and retains a life estate in that particular parcel and is also the holder of a Land Contract which is paid through revenue from the farming operation of Genart Hillcrest Farms, LLC. Genart Hillcrest Farms, LLC is owned 100% by Arthur Steffen and holds one parcel of real estate as well as all the machinery, equipment, animals, and farm personal property. (Debtors' Mot. Joint Admin. ¶¶6-7, Case No. 20-20108, ECF No. 22.) The court entered an order directing joint administration of both cases on March 6, 2020. (Order, Case No. 20-20108, ECF No. 22.) A chapter 12 plan has yet to be filed or confirmed by the court.

The *Steffen* plaintiffs rely on, as their primary source of income, revenue derived from selling milk and the proceeds from cows culled from the herd and sold for meat. Plaintiffs' Class I milk price has dropped from close to $19.00 per cwt in January 2020 to a current rate of $12.50 per cwt. (Compl. ¶33, Adv. No. 20-2068, ECF No. 1.) Plaintiffs ship approximately 600,000 pounds of milk per month and due to the decrease from March through May, they estimate

having lost $65,000 to $80,000 that would otherwise have been paid had the markets been unaffected by the pandemic. (Decl. Arthur Steffen ¶7, Adv. No. 20-2068, ECF No. 12-1.) Furthermore, due to the temporary closure of slaughterhouses, plaintiffs received historically low prices for cows recently culled from the herd. As to the cull cow price, it has dropped at least $150.00 to $200.00 per animal compared to what it should have been prior to the pandemic and its effect on meatpackers. (Decl. Arthur Steffen ¶10, Adv. No. 20-2068, ECF No. 12-1.) Plaintiffs have significant mortgage and utility expenses and employ four people with an average monthly payroll of $16,082.36. Plaintiffs are having a difficult time making that payroll. (Compl. ¶34, Adv. No. 20-2068, ECF No. 1.)

On May 6, 2020, plaintiffs applied to the SBA's Paycheck Protection Program through a financial institution, BMO Harris Bank, and supplied the necessary documentation. (Attach. to Compl. 17-18, Adv. No. 20-2068, ECF No. 1.) They received notice on or about May 11, 2020 that they did not qualify due to their currently pending bankruptcy cases. (Attach. to Compl. 19, Adv. No. 20-2068, ECF No. 1.) Plaintiffs otherwise meet the requirements of the loan program: their small business is operated in the United States; the business is not a type ineligible for the Small Business Administration's section 7(a) Loan Program, CFR 120.110; and the plaintiffs have demonstrated a need for the desired credit. (Compl. ¶¶43-44, Adv. No. 20-2068, ECF No. 1.) Without a PPP loan, plaintiffs will be forced to lay off or furlough essential employees which will have a detrimental effect on the debtors' bankruptcy estates and may likely drive them out of business. (Decl. Arthur Steffen ¶11, Adv. No. 20-2068, ECF No. 12-1.)

On May 14, 2020, plaintiffs filed a Complaint for Declaratory Judgment, Writ of Mandamus and Injunctive Relief against the United States of America Small Business Administration and Jovita Carranza, solely as Administrator of the U.S. Small Business Administration. (Adv. No. 20-2068, ECF No. 1.) The adversary proceeding was filed under the Administrative Procedure Act, 5 U.S.C. §§701 *et seq*. and section 525 of the United States Bankruptcy Code seeking (a) a declaratory judgment that the SBA's implementation of the PPP is unlawful, discriminatory against prospective borrowers who are debtors in bankruptcy, and beyond its statutory authority; (b) a writ of mandamus under 28 U.S.C. §1361 to compel the SBA to remove its disqualification of the bankruptcy debtors as viable applicants from all PPP applications, including the PPP official SBA Form 2483 (PPP Borrower Application); and (c) an

order enjoining SBA from denying plaintiffs a loan under the PPP based on plaintiffs' status as chapter 12 debtors.

On May 14, 2020, plaintiffs also filed a Motion for Emergency Hearing on the Complaint on the grounds that it was urgent that plaintiffs be authorized to apply for and obtain lending under the PPP while the funds were still available. (Adv. No. 20-2068, ECF No. 5.) On May 19, 2020, plaintiffs filed a Motion for Temporary Restraining Order and/or Preliminary Injunction. (Adv. No. 20-2068, ECF No. 12).

### 3. *Thull Farms, LLC v. SBA, et al., Adv. No. 20-2069*

On February 26, 2020, Thull Farms, LLC filed a chapter 12 petition. (Case No. 20-21489, ECF No. 1.) On that same day, Ralph D. Thull and Mary Lou Thull, Case No. 20-21491, ECF No. 1, and Randall J. Thull and Ashley Thull, Case No. 20-21492, ECF No. 1, filed separate chapter 12 petitions. Ralph and Mary Lou Thull are the parents of Randy Thull. Ashley Thull is Randy Thull's wife and the daughter-in-law of Ralph and Mary Lou Thull. Thull Farms, LLC is a Wisconsin LLC which is the operating entity for the farming operations of the entire family. Ralph and Mary Lou Thull jointly own substantially all the real estate used by the farm and the LLC owns substantially all of the improvements, equipment and machinery. (Debtors' Mot. Joint Admin. ¶6, Case No. 20-21489, ECF No. 11.) The court entered an order directing joint administration of all three cases on May 19, 2020. (Order, Case No. 20-21489, ECF No. 57.) A chapter 12 plan has yet to be filed or confirmed by the court. Thull Farms, LLC is the only named plaintiff in the adversary proceeding.

Thull Farms, LLC – as the operating entity that employs the individuals who operate the ongoing business of the farm – relies on, as its primary source of income, revenue derived from selling milk and the proceeds from cows culled from the herd and sold for meat. Plaintiff's Class I milk price has dropped from close to $19.00 per cwt in January 2020 to a current rate of $12.50 per cwt. (Compl. ¶33, Adv. No. 20-2069, ECF No. 1.) Plaintiff ships approximately two million pounds of milk per month and due to the decrease from March through May, it estimates having lost over $120,000 that would otherwise have been paid had the markets been unaffected by the pandemic. (Decl. Randall Thull ¶7, Adv. No. 20-2069, ECF No. 14-1.) Furthermore, due to the temporary closure of slaughterhouses, plaintiff received historically low prices for cows recently culled from the herd. As to the cull cow price, it has dropped at least $150.00 to $200.00 per animal compared to what it should have been prior to the pandemic and its effect on

meatpackers. (Decl. Randall Thull ¶10, Adv. No. 20-2069, ECF No. 14-1.) Plaintiff employs eight people and has an average monthly payroll of $38,210.00, as well as significant mortgage and utility expenses. (Compl. ¶34, Adv. No. 20-2069, ECF No. 1.)

On May 6, 2020, plaintiff applied to the SBA's Paycheck Protection Program through a financial institution, Investors Community Bank, and supplied the necessary documentation. (Attach. to Compl. 17-18, Adv. No. 20-2069, ECF No. 1.) Plaintiff received notice on or about May 7, 2020 that it did not qualify due to its currently pending bankruptcy case. (Attach. to Compl. 19, Adv. No. 20-2069, ECF No. 1.) Plaintiff otherwise meets the requirements of the loan program: its small business is operated in the United States; the business is not a type ineligible for the Small Business Administration's 7(a) Loan Program, CFR 120.110; and the plaintiff has demonstrated a need for the desired credit. (Compl. ¶¶43-44, Adv. No. 20-2069, ECF No. 1.) Without a PPP loan, plaintiff will be forced to lay off or furlough essential employees which will have detrimental effect on the debtor's bankruptcy estate and may likely drive it out of business. (Decl. Randall Thull ¶11, Adv. No. 20-2069, ECF No. 14-1.)

On May 14, 2020, plaintiff filed a Complaint for Declaratory Judgment, Writ of Mandamus and Injunctive Relief against the United States of America Small Business Administration and Jovita Carranza, solely as Administrator of the U.S. Small Business Administration. (Adv. No. 20-2068, ECF No. 1.) The adversary proceeding was filed under the Administrative Procedure Act, 5 U.S.C. §§701 *et seq*. and section 525 of the United States Bankruptcy Code seeking (a) a declaratory judgment that the SBA's implementation of the PPP is unlawful, discriminatory against prospective borrowers who are debtors in bankruptcy, and beyond its statutory authority; (b) a writ of mandamus under 28 U.S.C. §1361 to compel the SBA to remove its disqualification of the bankruptcy debtors as viable applicants from all PPP applications, including the PPP official SBA Form 2483 (PPP Borrower Application); and (c) an order enjoining SBA from denying plaintiff a loan under the PPP based on the plaintiff's status as a chapter 12 debtor.

On May 14, 2020, plaintiff also filed a Motion for Emergency Hearing on the Complaint on the grounds that it was urgent that plaintiff be authorized to apply for and obtain lending under the PPP while the funds were still available. (Adv. No. 20-2069, ECF No. 5.) On May 19, 2020, plaintiff filed a Motion for Temporary Restraining Order and/or Preliminary Injunction. (Adv. No. 20-2069, ECF No. 14.)

**B.    The Small Business Administration, the CARES Acts, and the Paycheck Protection Program**

Congress created the Small Business Administration through the Small Business Act, 15 U.S.C. §§631, *et seq.*, to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns," in order to preserve the system of free competitive enterprise that is essential to the economic well-being and security of the nation. 15 U.S.C. §631(a). To promote that objective, Congress placed the SBA under the management of a single Administrator, 15 U.S.C. §633(a), (b)(1), who is given authority under section 7(a) of the Act, 15 U.S.C. §636(a), to provide a wide variety of technical, managerial, and financial assistance to small-business concerns. In the performance of these authorized functions, the Administrator is further empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and "take any and all actions . . . [that] [she] determines . . . are necessary or desirable in making . . . loans." 15 U.S.C. §634(b)(6), (b)(7).

On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). Under the CARES Act, Congress amended the SBA's existing "7(a) Loan Program" to create the Paycheck Protection Program. Section 1102(a)(2) of the CARES Act adds a new paragraph (36) to section 7(a) of the Small Business Act, 15 U.S.C. §636(a)(36), providing for a new program of loans for eligible small businesses to cover certain uses, including "payroll costs," the "payments of interest on any mortgage obligation," and "rent," among other approved uses. CARES Act §1102(a)(2); 15 U.S.C. §636(a)(36)(F)(i).

The CARES Act initially allocated $349 billion to guarantee PPP loans. CARES Act §1102(b)(1). On April 16, 2020, the SBA announced that the PPP was closed to new applications. Eight days later, on April 24, 2020, Congress passed the Paycheck Protection Program and Health Care Enhancement Act ("CARES Act II"), adding another $310 billion to the PPP. Pub. L. No. 116-139, §101(a)(1), 134 Stat. 620 (2020). The SBA began accepting new PPP applications from participating lenders on Monday, April 27, 2020.

The CARES Act authorizes the Administrator of the SBA to issue emergency regulations to implement the PPP without complying with typical notice and comment requirements. CARES Act §1114. The SBA posted its First Interim Final Rule implementing the PPP on the agency's website on April 3, 2020 and published the rule in the Federal Register on April 15, 2020. The First Interim Final Rule does not directly address bankrupt debtors' inability to

participate in the PPP, but it does refer to SBA Form 2483, the Paycheck Protection Program Borrower Application. That form requires an applicant to certify, among other things, that the applicant is not "presently involved in any bankruptcy."

The SBA later announced further changes to the interim final rule. On April 24, 2020, the SBA posted a Fourth Interim Final Rule. Section III(4) of the SBA's Fourth Interim Final Rule specifically addresses bankrupt debtors' ineligibility for PPP loans. This iteration of the Interim Final Rule provides:

> 4. **Eligibility of Businesses Presently Involved in Bankruptcy Proceedings**
> Will I be approved for a PPP loan if my business is in bankruptcy?
>
> No. If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan. If the applicant or the owner of the applicant becomes the debtor in a bankruptcy proceeding after submitting a PPP application but before the loan is disbursed, it is the applicant's obligation to notify the lender and request cancellation of the application. Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes.
>
> The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy. The Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement. Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.

Business Loan Program Temporary Changes, 85 Fed. Reg. 23,451 (April 28, 2020) (to be codified at 13 C.F.R. pts. 120-121).

## LEGAL CONCLUSIONS AND ANALYSIS

Plaintiffs seek both declaratory and injunctive relief against the SBA. The Declaratory Judgment Act grants wide discretion to a court, acting within its independent jurisdiction in a case of actual controversy, to "declare the rights and other legal relations of any interested party." 28 U.S.C. §2201(a); *see also Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995). To obtain injunctive relief, the plaintiff must establish "(1) that [the plaintiff] will suffer irreparable harm absent preliminary injunctive relief during the pendency of [the] action; (2) inadequate remedies at law exist; and (3) [the plaintiff] has a reasonable likelihood of success on the merits." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017) (citing *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661-62 (7th Cir. 2015)). Upon a successful showing by the plaintiff, the court must then "engage in a balancing analysis, to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Id.* (citing *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1058 (7th Cir. 2016)).

Federal Rule of Civil Procedure 65(a)(2), made applicable to these adversary proceedings by Bankruptcy Rule 7065, allows the court to advance the trial on the merits and consolidate it with a hearing on a request for a preliminary injunction. Here, the parties do not dispute the material facts and agree that the record is complete. Accordingly, with the parties' consent, the court will address the merits of the plaintiffs' claims in full.[1]

## I. Section 525(a) Does Not Preclude the SBA from Denying Bankrupt Debtors PPP Loans.

Plaintiffs' lead contention is that the SBA's denial of their PPP applications violates the anti-discrimination provisions in 11 U.S.C. §525(a). This Bankruptcy Code section bars governmental units from denying, revoking, suspending or refusing to renew "a license, permit, charter, franchise, or other similar grant" based on a person being or having been a debtor in bankruptcy. *Id.*

Plaintiffs push for a broad interpretation of section 525(a), contending that it precludes

---

[1] The SBA contends that Congress has precluded plaintiffs from obtaining injunctive relief against the agency. In the Small Business Act, Congress agreed to waive sovereign immunity to allow suits against the SBA, but the waiver is expressly limited and the statutory waiver provides that "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against" the SBA or its property. 15 U.S.C. §634(b)(1). Because the court rules against plaintiffs on the merits of their claims, it need not address whether this statutory limitation is a further defense to plaintiffs' request for injunctive relief.

the denial of participation in any government program based on an applicant's status as a bankruptcy debtor. (Pls.' Br. Supp. Compl. 11, Adv. No. 20-2065, ECF No. 14.) The SBA argues for a narrower construction, insisting that section 525(a)'s prohibition extends only to negative actions related to a "license, permit, charter, franchise, or other similar grant." According to the SBA, denying participation in a subsidized loan program, like the PPP, falls outside the scope of section 525(a). (Defs.' Resp. to Pls.' Mot. Emergency Hr'g 12, Adv. No. 20-2065, ECF No. 12.)

The Seventh Circuit has not had occasion to address section 525(a), but four of its sister circuits have interpreted the provision. Three courts of appeal have adopted a narrow construction based on the statute's peculiar textual formulation. *See Ayes v. United States Dep't of Veterans Affairs*, 473 F.3d 104, 110 (4th Cir. 2006); *Toth v. Michigan State Housing Dev. Auth.*, 136 F.3d 477, 480 (6th Cir. 1998); *Watts v. Pennsylvania Housing Fin. Co*., 876 F.2d 1090, 1094 (3rd Cir. 1989). The Second Circuit, in contrast, has embraced a broader reading of the statute, particularly the phrase "other similar grant," holding that it bars the denial of any "property interests" that are "unobtainable from the private sector and essential to a debtor's fresh start" based on an applicant's bankruptcy status. *See Stoltz v. Brattleboro Housing Auth.*, 315 F.3d 80, 90 (2d Cir. 2002) (footnotes omitted).

The Third Circuit's *Watts* decision summarizes the origins of section 525(a). *Watts* involved a Pennsylvania state agency's denial of bankrupt debtors' request to participate in a loan program for financially troubled homeowners. The court of appeals explained that section 525 codifies the holding in *Perez v. Campbell*, 402 U.S. 637 (1971), a case under the Bankruptcy Act holding that a state could not deny a driver's license to a discharged debtor based on the debtor's non-payment of a discharged debt. The Third Circuit observed that in codifying *Perez*, Congress intentionally limited the scope of the anti-discrimination rule, proscribing only those actions involving a "license, permit, charter, franchise, or other similar grant." 11 U.S.C. §525(a). The Third Circuit explained that these enumerated items are "in the nature of indicia of authority." They are permissions or authorizations "from a governmental unit to the authorized person to pursue some endeavor." *Watts*, 876 F.2d at 1093. The court of appeals concluded that participation in a loan program was of an entirely different nature. Accordingly, a state agency could deny bankruptcy debtors' participation in a state loan program without violating section 525. In *Ayes*, the Fourth Circuit used essentially the same reasoning to conclude that the denial

of participation in a Veterans Affairs home-loan guaranty program based on applicants' bankruptcy histories did not violate section 525. And, the Sixth Circuit in *Toth* applied a similar analysis in upholding a state agency's denial of a bankrupt debtor's application for a state-issued home improvement loan.

Bankruptcy courts around the country are now facing a deluge of section 525(a) challenges to the SBA's PPP rule. Like the courts of appeal, bankruptcy courts have reached differing interpretations and conclusions. The parties here cite bankruptcy court decisions applying section 525(a), including rulings that both enjoined and upheld the SBA's actions.

Plaintiffs highlight an April 25, 2020 temporary restraining order from the bankruptcy court in the Southern District of Texas in *Hidalgo County Emergency Service Foundation v. Carranza*, Adv. No. 20-2006, 2020 WL 2029252 (Bankr. S.D. Tex. Apr. 25, 2020). In that case, the court granted a temporary restraining order after concluding that the PPP was not a traditional loan program, but rather a "support product," denial of which violated section 525(a). Transcript of Hearing at 30, *Hildago v. Carranza*, Adv. No. 20-2006 (Bankr. S.D. Tex. Apr. 24, 2020). In reaching this conclusion, the bankruptcy court observed that the SBA had agreed to forgo traditional creditworthiness tests and required no collateral for the funds. *Id.* at 29. The bankruptcy court also noted that the statute eliminates a recipient's repayment obligations if the funds received are used for designated purposes, including paying payroll. *Id.* Based on these attributes, the *Hidalgo* court distinguished the *Watts*, *Ayers* and *Toth* decisions and concluded that section 525(a) barred the SBA's approach. *Id.* at 31-33.

The SBA cites decisions that reach the opposite conclusion. The agency first relies on a 1989 decision from this court, *In re Elter*, 95 B.R. 618 (Bankr. E.D. Wis. 1989), which held that section 525(a) was not offended by an agency's refusal to extend a government-guaranteed student loan based on a debtor's bankruptcy history. The SBA also cites recent decisions from bankruptcy courts in the District of Delaware, *Cosi, Inc. v. SBA*, Adv. No. 20-50591 (Bankr. D. Del. Apr. 30, 2020), and Western District of Texas, *Trudy's Texas Star, Inc. v. Carranza*, Adv. No. 20-1026 (Bankr. W.D. Tex. May 7, 2020). These bankruptcy courts concluded that the SBA's denial of PPP eligibility to bankrupt debtors did not violate section 525(a) because PPP funds are distributed through loans, putting them outside section 525(a)'s antidiscrimination provisions.

Given the plain terms of the CARES Act, this court agrees with the approach of the *Cosi*

and *Trudy's* courts and will follow *Elter* and the majority interpretation of section 525(a) adopted by the Third, Fourth, and Sixth Circuits. As *Watts*, *Ayers*, and *Toth* explain, Congress limited the scope of section 525(a) to denials of certain types of government authorizations or permissions – denials of a "license, permit, charter, franchise, or other similar grant." The PPP is a heavily subsidized loan guarantee program; it is not a license, permit, charter, franchise or other similar grant. Accordingly, the SBA's denial of PPP participation based on the plaintiffs' bankruptcies does not run afoul of section 525(a).

The court will not adopt the *Hidalgo County* court's approach in recharacterizing the PPP loan payments. The record is clear that Congress created the PPP as an amendment to the SBA's pre-existing *loan* program and both the statute and agency regulations refer to the funds distributed as "loans." The PPP loans are made through private lenders and participants sign promissory notes, subject to SBA guarantees. While it is certainly true that Congress created the program to make the funds readily available, even where market loans would not be, and the SBA has adopted regulations allowing the loans to be made with little-to-no underwriting, these attributes do not alter the fact that the program results in an actual loan. It is also true that Congress provided for loan forgiveness if the funds are used in certain ways, but the loan forgiveness is just that – it is a *loan* forgiveness. Moreover, forgiveness is conditioned on future events; if a recipient fails to use the funds in one of the delineated ways, the recipient must pay back the loan.

In sum, section 525(a) does not preclude the SBA from denying government-subsidized PPP loans to bankrupt debtors. Plaintiffs' claims under section 525(a) are denied on the merits and plaintiffs are not entitled to injunctive relief on those claims.

**II.** **The SBA's Fourth Interim Final Rule Does Not Violate the APA.**

Plaintiffs also challenge the SBA's actions under the Administrative Procedure Act. They claim that the rule barring bankruptcy debtors from PPP participation exceeds the agency's authority and is "arbitrary and capricious." The SBA insists it promulgated the rule consistent with its Congressionally-granted authority and that the bar on bankruptcy debtors is rational and consonant with terms and policies governing its section 7(a) loan program on to which the PPP has been added.

**A.** **The SBA's Rule Is Within its Statutory Authority.**

With respect to the SBA's authority, plaintiffs argue that "no law, regulation or rule of any kind disqualifies, or authorizes the SBA to disqualify, bankruptcy debtors from participating in the PPP." (Pls.' Br. Supp. Compl. 15, Adv. No. 20-2065, ECF No. 14.) They similarly contend that the SBA's authority is limited to the development of regulations that carry out the provisions of the CARES Act, and that "it is clear that Congress did not intend for bankruptcy debtors to be excluded from participation in the PPP." (Pls.' Br. Supp. Compl. 16, Adv. No. 20-2065, ECF No. 14.)

Plaintiffs are correct that the CARES Act does not itself directly provide that bankrupt debtors are ineligible for PPP participation. Indeed, defendants concede the statute is silent on this specific issue. But statutory silence does not mean that the SBA is acting outside its authority. The relevant issue is whether the SBA's promulgation of a rule that bars bankrupt debtors from participating in the PPP exceeds the agency's authority. Nothing in the statutory text suggests that the Congress was intending to limit the SBA's rulemaking authority or that Congress was providing an exhaustive list of eligibility requirements that the SBA could not augment through rulemaking.

The agency has now promulgated a Fourth Interim Final Rule that details and explains the agency's position. Given the Fourth Interim Final Rule, plaintiffs' assertion that there is <u>no</u> regulation or rule that disqualifies bankruptcy debtors from PPP participation is factually wrong. The Fourth Interim Final Rule does so explicitly. Even the First Interim Final Rule included references to the application form, which included the bar on bankrupt debtor participation.

The SBA supports its rulemaking by pointing to the broad authority Congress gave the agency upon its creation, and contends that Congress built upon that authority when it authorized

the SBA to set the terms and conditions on which PPP loans are issued. Section 1114 of the CARES Act authorizes the SBA Administrator to promulgate emergency rules to implement the PPP without the normal notice and comment period. Congress also specifically directed the SBA to act quickly; the Administrator was required to establish regulations within 15 days of March 27, 2020. The SBA complied by announcing its First Interim Final Rule on the SBA's website on April 3, 2020. That rule referenced SBA Form 2483, the Paycheck Protection Program Borrower Application, which includes the exclusion of bankrupt debtors from PPP participation.

Given this background, including the speed with which Congress adopted the CARES Act and wanted funds to be disbursed in the light of the pandemic, it is understandable that Congress did not spell out in the statute all requirements for PPP participation. Instead, Congress entrusted the details to the SBA, engrafting the PPP on to the SBA's existing section 7(a) lending program, and giving the SBA emergency rulemaking authority. Against this backdrop, the court cannot conclude that the SBA's adoption of a rule excluding bankrupt debtors from the PPP is beyond the agency's delegated authority.

**B. The SBA's Rule Is Not Arbitrary and Capricious.**

Plaintiffs next contend that the SBA violated the APA because the exclusion of bankruptcy debtors from the PPP is "arbitrary and capricious." Plaintiffs insist that the exclusion is contrary to both the CARES Act itself and the SBA's own eligibility requirements. According to the plaintiffs, "[n]o principled distinction can be made between a chapter 12 debtor-in-possession and any other 'struggling small business.'" (Pls.' Br. Supp. Compl. 18, Adv. No. 20-2065, ECF No. 14.)

Just last year, the Seventh Circuit explained the limited review applicable to agency actions under the arbitrary and capricious standard in *Boucher v. United States Dept. of Agriculture*, 934 F.3d 530, 547 (7th Cir. 2019). The Seventh Circuit traced the limited standard of review to Congress's instruction to defer to an agency's expertise. Thus, "an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Id.* at 547 (quoting *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989)). But agencies are not given free rein. The court must consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Id.* (quoting *Marsh*, 490 U.S. at

378). After reviewing the entire record, the court must uphold the agency's action if the agency "considered" all of the relevant factors and the court "can discern a rational basis for the agency's choice." *Id.* (quoting *Israel v. United States Dep't of Agriculture*, 282 F.3d 521, 526 (7th Cir. 2002)).

An agency decision will be found "arbitrary and capricious" if the agency, when making the decision,

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* (quoting *Motor Vehicle Mfrs. Assoc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The SBA justifies its adoption of the bankruptcy exclusion based on the decision of Congress and the President to enact the PPP, not as an entirely new stand-alone program, but rather by amending the SBA's preexisting section 7(a) loan program. Through the CARES Act, the political branches provided for a massive package of emergency economic assistance in response to the COVID-19 pandemic. Among this economic assistance is the PPP, under which Congress directed the SBA to extend loans to eligible small businesses for certain covered uses, including payroll costs, mortgage interest, and rent. The statute makes several specific changes to section 7(a) with respect to the new PPP loan program. For example, the CARES Act authorizes the SBA to guarantee loans to some non-profits, independent contractors, self-employed individuals, and small businesses. The statute relaxes size limitations otherwise applicable to section 7(a) loans. But, as the SBA observes, the CARES Act otherwise leaves much of the preexisting 7(a) structure intact, and engrafts the PPP onto and subject to that structure. Among the provisions that Congress left intact is the provision in 15 U.S.C. §636(a)(6), in which Congress requires that SBA loans be of "sound value" and of a kind that will "reasonably … assure repayment."

The SBA explains that to achieve the Congressional goal of implementing the PPP expeditiously, it eliminated the assessment of individual applicants' credit and instead imposed a much simpler "bright-line" rule excluding those in bankruptcy through the official PPP Borrower Application, SBA Form 2483. SBA thus reconciled the "sound value" instruction in section 636(a)(6), with Congress's instruction to proceed expeditiously with the PPP.

Plaintiffs call this explanation "absurd." They complain that by flatly precluding any bankruptcy debtor from PPP participation the SBA has drawn an indefensible line. Thus, a business that happens to apply for and receive a PPP loan immediately before filing a bankruptcy petition will be eligible, while a business that applies the day after filing its bankruptcy petition won't be eligible. (Pls.' Br. Supp. Compl. 18, Adv. No. 20-2065, ECF No. 14.)[2] Plaintiffs also complain that many distressed businesses that have successfully applied for and received PPP funds share many characteristics in common with the plaintiffs, but only the plaintiffs have been denied PPP loans because they also happen to have filed for bankruptcy. (Pls.' Br. Supp. Compl. 18, Adv. No. 20-2065, ECF No. 14.)

There can be little doubt that the bankruptcy exclusion is hardly an example of delicate or precise policymaking. The SBA could certainly have adopted other, alternative approaches in balancing the need for a quick disbursement of emergency economic relief against the "reasonably assure repayment" requirement that Congress left intact under section 636(a)(6). That the SBA chose to use a broad and blunt instrument – flatly excluding bankrupt debtors from PPP participation – does not make the SBA's rule arbitrary and capricious. The law does not require precision or perfection, particularly at the expense of other valid and competing Congressional goals.

The record shows that the SBA has considered the relevant factors, including the goals of the CARES Act and those statutory provisions that the CARES Act left intact. The denial of PPP participation to entities that have already resorted to bankruptcy, while reserving PPP loans to those whose financial troubles have not yet gotten to the point (and perhaps never will) is a rational policy choice. The agency's policy choice is consistent with the CARES Act and the SBA's preexisting statutory mandate. Had Congress intended to preclude such a rule, it could have excepted the PPP from section 636(a)(6), but it did not do so. Using the bankruptcy exclusion question on the PPP application has the obvious benefit of being easy to administer. That is not a small matter, given the speed with which Congress and the President directed the SBA to implement the CARES Act and PPP.

The SBA's explanation is consistent with the record and the court cannot conclude that it

---

[2] The Fourth Interim Final Rule now addresses this situation. Applicants who apply for and are granted a PPP loan and then file for bankruptcy before receiving the funds are required to cancel the application or return the funds, or the loan will be considered used for unauthorized purposes.

is "implausible." That one could have adopted a different approach or policy – perhaps even a better one – does not make the SBA's policy choice invalid. It is not this court's role to order the SBA to replace its own policy judgment with that of the plaintiffs.

### III. Plaintiffs Are Not Entitled to a Writ of Mandamus.

Plaintiffs' final request for relief is for a writ of mandamus, instructing the SBA Administrator to remove from all PPP applications, including the plaintiffs' PPP applications and their proposed lenders' Lender Applications, the SBA's disqualification of bankruptcy debtors as viable applicants. Plaintiffs contend that the SBA has a non-discretionary duty to comply with the CARES Act and that the SBA's current application exceeds the agency's statutory authority.

Mandamus is an extraordinary remedy. *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (citing *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). The court may grant a writ of mandamus only where the plaintiff demonstrates: (1) a clear right to the relief sought; (2) a plainly defined, non-discretionary and ministerial duty by the defendant to perform the action requested; and (3) the lack of any other adequate remedy. *See Center for Dermatology and Skin Cancer, Ltd*., 770 F.3d 586, 589-90 (7th Cir. 2014). The SBA insists that plaintiffs have not established any of these elements.

Given the court's rulings on the merits of plaintiffs' section 525(a) and APA claims, the debtors are not clearly entitled to the relief they seek. Their request for a writ of mandamus is denied.

### CONCLUSION

The court is mindful of the difficult financial situation facing the plaintiffs. The farm economy was already heavily distressed before the COVID-19 pandemic. This distress was particularly acute for dairy farmers. Our country's efforts to combat the coronavirus have led to huge economic dislocations across all industries. The already struggling farm and dairy economies have not been an exception; indeed, they have been particularly hard hit.

Congress and the President responded to the overall economic destruction by enacting the CARES Act, including the PPP. In doing so, they chose to entrust the SBA with emergency rulemaking authority to implement the response efforts quickly. The SBA promptly promulgated emergency rules consistent with both the CARES Act and the agency's other pre-existing, statutory obligations. In balancing many policy interests, the SBA announced a rule

that excludes bankrupt debtors from receiving loans under the Paycheck Protection Program. While the SBA could have implemented a different protocol or set of application criteria, and plaintiffs understandably wish the agency had done so, it is not for this court to second-guess the SBA's judgment or overturn its exercise of its statutory authority. To the extent there is a remedy for the plaintiffs' situation, it lies with the political branches, not this court. Plaintiffs' request for injunctive relief is denied and their complaint is dismissed on the merits. This court's ruling is final as to plaintiffs' core claims and serves as recommended findings of fact and conclusions of law to the district court on the non-core claims.

May 22, 2020

Brett H. Ludwig
United States Bankruptcy Judge